UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BGG, by and through his guardian ad litem Maria M.<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>Kilolo Kijakazi, Commissioner of Social Security,<br><br>　　　　　　　Defendant. | 2:23-cv-00954-MDC<br><br>**<u>Order</u>**<br><br>MOTION TO REMAND [ECF NO. 12]; CROSS-MOTION TO AFFIRM [ECF NO. 14] |

    This matter involves plaintiff BGG's request for a remand of the Administrative Law Judge's ("ALJ") final decision denying her social security benefits. BGG filed a motion for remand (ECF No. 12) and the Commissioner filed a cross-motion to affirm. (ECF No. 14). The Court grants plaintiff's motion to remand and denies the Commissioner's cross-motion.

**I.    Background**

    Maria M. filed an application for supplemental security income for her child BGG on February 19, 2020. AR[1] 250-59. The ALJ followed the three-step sequential evaluation process to guide the

---

[1] The Administrative Record ("AR") is at ECF No. 10.

1

decision. 20 C.F.R. § 416.924(a). The ALJ agreed that BGG did not engage in substantial gainful activity since February 19, 2020. AR 12. The ALJ found that BGG suffered from medically determinable severe impairments consisting of attention-deficit disorder with hyperactivity, learning disorder, and Sturge-Weber syndrome. AR 12. The ALJ decided that the impairments did not meet or equal any "listed" impairment. AR 12, citing 20 C.F.R. part 404, subpart P, Appendix 1. The ALJ determined that BGG did not have a functional equivalent of a listed impairment across the domains of function, that BGG had:

- a marked limitation in acquiring and using information;
- less than a marked limitation in attending and completing tasks;
- less than a marked limitation in interacting and relating with others;
- no limitation in moving about and manipulating objects;
- no limitation in the ability to care for himself; and
- less than a marked limitation in health and physical well-being.

AR 14-15. The ALJ determined that BGG did not suffer from a disability between February 19, 2020, and the date of the decision. AR 21.

Plaintiff argues that the ALJ (1) abused his discretion by failing to order a psychological consult with IQ testing and (2) failed to state reasons supported by substantial evidence for rejecting the opinions of the two nurse practitioners. ECF Nos. 12. The Commissioner argues in both her countermotion and response that (1) the plaintiff waived the issue regarding the IQ test because he did not bring it up at the hearing and (2) that the ALJ reasonably evaluated the medical opinions of record. ECF Nos. 14 and 15. The plaintiff argues in the reply regarding the IQ test that the ALJ has a duty to develop the record even if the claimant is represented by counsel. ECF No. 16 at 5.

//

## II. Discussion

### a. Legal Standard

The Fifth Amendment prohibits the government from depriving persons of property without due process of law.  U.S. Const. amend. V.  Social security plaintiffs have a constitutionally protected property interest in social security benefits.  *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990).  When the Commissioner of Social Security renders a final decision denying a plaintiff's benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1154, 1157; *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (quoting *Biestek*); see also *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (substantial evidence "is a highly deferential standard of review"). The substantial evidence standard is even less demanding than the "clearly erroneous" standard that governs appellate review of district court fact-finding—itself a deferential standard. *Dickinson v. Zurko*, 527 U.S. 150, 152-53 (1999). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The District Court's review is limited.  *See Treichler v. Comm'r of SSA,* 775 F.3d 1090, 1093 (9th Cir. 2014) ("It is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.") The Court examines the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

3

Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938) (defining "a mere scintilla" of evidence).  If the evidence supports more than one interpretation, the Court must uphold the Commissioner's interpretation.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

"The ALJ has a duty to develop the record … even when the claimant is represented by counsel." *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991); see also *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (holding the ALJ's failure to develop the record to include a complete set of IQ scores was legal error). A claimant's IQ is particularly important because IQ score can be a deciding factor in determination of intellectual disability:

> ….IQ testing plays a particularly important role in assessing the existence of intellectual disability. Listing 12.00 generally lays out the necessary procedures for evaluating mental disorders, including intellectual disability, and for documenting relevant objective findings. In that listing the SSA has recognized that "[s]tandardized intelligence test results are essential to the adjudication of all cases of intellectual disability," except where a claimant is unable to complete such testing. Listing 12.00(d)(6)(b). At the third step of the SSA's five-step process, when a claimant's impairment is compared to the criteria in Listing 12.05, three of the four criteria for intellectual disability rely in whole or in part on IQ test scores. (The fourth criterion applies when the claimant's incapacity precludes IQ testing.) Because meeting the relevant listing conclusively determines that a claimant is indeed disabled, 20 C.F.R. § 416.920(a)(4)(iii), the claimant's IQ score can be the deciding factor in a determination of intellectual disability.

*Garcia,* 768 F.3d at 931.  When the issue is raised, an ALJ should develop the record regarding IQ testing. *Id.,* see also *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's

interests are considered….This duty exists even when the claimant is represented by counsel.")(quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983)). The Commissioner may purchase a consultative examination when the record does not contain adequate evidence and the evidence needed is highly technical or specialized. 20 C.F.R. § 416.919a(b)(1), (3).

    **b. Analysis**

    The ALJ considered claimant's intelligence in determining whether he had "an impairment or combination of impairments that functionally equals the severity of the listings." AR 14, 17, and 20. The record shows that BGG is independent at the second-grade level, needs instruction at the third-grade level, and is frustrated at the fourth-grade level when he is 16 years old. AR 740, 755. It is undisputed that the claimant's intelligence is at issue in this case. As discussed below, the record also demonstrates that the evidence reviewed and considered by the ALJ raised the issue of claimant's IQ and the need to obtain IQ test results.  The ALJ's duty to develop the record is especially acute in cases like this one, where a claimant alleges intellectual disability and the evidence triggers the inquiry into claimant's IQ, because standardized intelligence test results are essential to the adjudication of almost all cases of intellectual disability under the Listing 12.05. 20 C.F.R. part 404, subpart P, Appendix 1, Listing 112.05, see also *Garcia,* 768 F.3d at 931.

    While claimant did not discuss his IQ at the hearing, claimant did not waive the matter.  At hearing, the claimant expressly requested to keep record open to submit additional evidence, which the ALJ allowed. AR 11. That additional evidence included Dr. Arch's evaluation and the doctor's discussion about claimant's IQ and request for IQ test results. AR 1155-58. Specifically, the record shows that plaintiff's provider, Dr. Arch, asked for "copies of results of any IQ testing" and indicated that plaintiff "has a low IQ." AR 1156-1157. The additional evidence of Dr Arch's notes (AR 1156-1157) sufficiently raised the issue of claimant's IQ, which the ALJ had a duty to develop the record.  *See*

*e.g.*, *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir.2005) (holding that the duty to develop the record was triggered where the evidence suggested "obvious vicissitudes" in the claimant's health).

However, while the ALJ received and relied on AR 1156-1157, the ALJ did not address the issue of claimant's IQ as a qualifying impairment. The Court finds that Dr Arch's notes demonstrate that the record was inadequate to determine the claimant's IQ. The record does not otherwise contain a psychological evaluation to establish BGG's cognitive ability.

Low IQ scores are relevant to the listing of impairments. 20 C.F.R. part 404, subpart P, Appendix 1, Listing 112.05. Without an IQ score, BGG cannot prove his level of dysfunction. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930–32 (9th Cir. 2014) (remanding because the psychologist did not perform all the subtests of the WAIS). The Court has reviewed the evidence of school performance, the presence of a learning disorder, and the highlight of the need for IQ scores by Dr. Arch. The Court finds that the ALJ abused his discretion in failing to develop the record regarding plaintiff's IQ. *Garcia*, 768 F.3d at 930 (complete testing of cognitive domains necessary). The ALJ erred by failing to develop the record by ordering a psychological consult with IQ testing. The Court remands this matter to the ALJ for further proceedings to develop the record as to plaintiff's IQ. Because the Court finds that remand is necessary for further development of the evidentiary record in this case, it need not address BGG's remaining arguments.

Accordingly,

IT IS ORDERED that plaintiff BGG's motion for reversal and/or remand (ECF No. 12) is GRANTED and the Commissioner's cross-motion to affirm (ECF No. 14) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court enter final judgment VACATING the decision of the Commissioner of Social Security and REMANDING this case for further proceedings consistent with this Memorandum Opinion.

IT IS FURTHER ORDERED, that on REMAND, the Commissioner is specifically directed to reopen and fully develop the record before rendering a ruling on plaintiff's claims, including ordering that plaintiff undergo IQ testing.

The Clerk of Court shall CLOSE this case.

IT IS SO ORDERED.

DATED this 25th day of January 2024.

_____
Maximiliano D. Couvillier III
United States Magistrate Judge